UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

ST. JOSEPH'S HOSPITAL HEALTH CENTER,

        Plaintiff,      5:24-cv-276 (BKS/ML)

v.

AMERICAN ANESTHESIOLOGY OF SYRACUSE,
P.C., AMERICAN ANESTHESIOLOGY, INC., NMSC II,
LLC, and NORTH AMERICAN PARTNERS IN
ANESTHESIA, L.L.P,

        Defendants.

---

AMERICAN ANESTHESIOLOGY OF SYRACUSE,
P.C., AMERICAN ANESTHESIOLOGY, INC., NMSC II,
LLC, and NORTH AMERICAN PARTNERS IN
ANESTHESIA, L.L.P,

        Counter-Claimants,

v.

ST. JOSEPH'S HOSPITAL HEALTH CENTER,

        Counterclaim-
        Defendant.

---

**Appearances:**

*For Plaintiff and Counterclaim-Defendant:*
John F. Queenan
Rivkin Radler LLP
66 South Pearl Street, 11th Floor
Albany, New York 12207

David A. Ettinger
Benjamin VanderWerp
Honigman LLP
2290 First National Building
660 Woodward Avenue
Detroit, Michigan 48226

*For Defendants and Counter-Claimants:*
Jon P. Devendorf
J.J. Pelligra
Barclay Damon LLP
Barclay Damon Tower
125 East Jefferson Street
Syracuse, New York 13202

W. Scott O'Connell
Jennifer Lada
Marc L. Antonecchia
Holland & Knight LLP
787 Seventh Ave., 31st Floor
New York, New York 10019

Hunter Bezner
Stephen C. Rasch
Holland & Knight LLP
1722 Routh Street, Suite 1500
Dallas, Texas 75201

**Hon. Brenda K. Sannes, Chief United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Plaintiff St. Joseph's Hospital Health Center ("St. Joseph's") initiated this action on February 26, 2024, against Defendants American Anesthesiology of Syracuse, P.C., American Anesthesiology, Inc., NMSC II, LLC, and North American Partners in Anesthesiology, L.L.P. (together, "NAPA"), asserting antitrust claims under the Sherman Act, 15 U.S.C. § 1 et seq. and the Donnelly Act, N.Y. Gen. Bus. Law § 340 as well as a breach of contract claim. (Dkt. No. 1). Defendants subsequently filed counterclaims alleging breach of contract, tortious interference with contract, and claims for injunctive and declaratory relief. (Dkt. No. 53).[1] On December 2,

---

[1] Defendants originally answered the Complaint and asserted a counterclaim for breach of contract on March 7, 2024. (Dkt. No. 20). After Plaintiff filed a motion to dismiss the counterclaim, (*see* Dkt. No. 45), Defendants filed an Amended Answer and Counterclaims, (Dkt. No. 53). Plaintiff subsequently withdrew its motion to dismiss, (Dkt. No. 56), and filed a motion to dismiss the amended counterclaims, (Dkt. No. 57).

2024, the Court, *inter alia*, dismissed Defendants' counterclaim for tortious interference with a contract under Rule 12(b)(6) of the Federal Rules of Civil Procedure and granted Defendants leave to amend. (Dkt. No. 83). Defendants filed a Second Amended Answer and Counterclaims. (Dkt. No. 87). Presently before the Court is Plaintiff's motion to dismiss the amended tortious interference counterclaim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Dkt. No. 89). The motion is fully briefed. (Dkt. No. 89-1, 92, 95). For the following reasons, the Court denies Plaintiff's motion.

## II. FACTS[2]

### A. Parties

Plaintiff St. Joseph's operates a 431-bed hospital in Syracuse, New York, that offers "a variety of inpatient and outpatient services, including cardiology, obstetrics, surgery, and Level II trauma care." (Dkt. No. 1, ¶¶ 8–9).

Defendant American Anesthesiology of Syracuse, P.C. was "the exclusive provider of anesthesia care at St. Joseph's and at Crouse Health, one of the other two hospitals in Onondaga County." (*Id.* ¶ 13). Defendant American Anesthesiology, Inc. is the parent corporation of American Anesthesiology of Syracuse. (*Id.* ¶ 14). Both entities are headquartered in Melville, New York. (*Id.* ¶¶ 13–14). Defendant NMSC II, LLC, a Delaware limited liability company, is the parent corporation of American Anesthesiology, Inc. (*Id.* ¶ 15). NMSC is a subsidiary of Defendant North American Partners in Anesthesia, L.L.P., a New York limited liability partnership, also based in Melville, New York that employs 5,000 clinicians and provides

---

[2] The facts are drawn from the Complaint, (Dkt. No. 1), and the Second Amended Counterclaims, (Dkt. No. 87). "[T]he Court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the non-moving party." *Howard v. Carter*, 615 F. Supp. 3d 190, 193 (W.D.N.Y. 2022) (citing *Hooks v. Forman, Holt, Eliades & Ravin, LLC*, 717 F.3d 282, 284 (2d Cir. 2013)).

3

services at 400 facilities nationwide in 22 states, making it the "largest anesthesia services provider in North America." (*Id.* ¶ 16).

### B.     Underlying Agreement

St. Joseph's and American Anesthesiology of Syracuse entered into an Administrative and Clinical Services Agreement (the "Agreement"), effective December 31, 2018. (Dkt. No. 87, at 21, ¶ 6). The Agreement "established an exclusive services arrangement between St. Joseph's and [American Anesthesiology of Syracuse] for the provision of anesthesiology services for St. Joseph's patients," including anesthesiologists and certified registered nurse anesthetists. (*Id.*; Dkt. No. 1, ¶ 2). The parties extended the Agreement several times, until St. Joseph's sent a notice of nonrenewal on December 29, 2023 such that the contract was set to expire on July 1, 2024. (Dkt. No. 87, at 21, ¶ 7; Dkt. No. 1, ¶ 32).

### C.     Relevant Conduct

On December 29, 2023, St. Joseph's informed NAPA that it would not renew the Agreement when the term ended on July 1, 2024. (Dkt. No. 1, ¶ 64). During subsequent contract negotiations, NAPA representatives discussed the possibility of negotiating a buyout. (*Id.* ¶ 65–67). Negotiations, however, were unsuccessful. (*Id.* ¶ 70.) St. Joseph's states that it would have been "faced with a critical shortfall in anesthesia care" if not for seeking to employ Defendants' anesthesiologists and CRNAs, which would have "seriously harm[ed] patients" and forced St. Joseph's to "face an impossible financial situation that would not allow it to remain in operation." (*Id.* ¶¶ 56, 58).

To that end, "to avoid these staffing and payment problems, and because of its inability to obtain reasonable terms from Defendants," St. Joseph's offered employment to NAPA's anesthesiologists and CRNAs (together, "Clinicians"), effective on expiration of the Agreement. (*Id.* ¶ 72). On February 26, 2024, St. Joseph's issued an email to its medical staff stating its

4

intention to offer employment,[3] delivered offer letters to NAPA-employed clinicians, and filed the present lawsuit. (Dkt. No. 87, at 29, ¶¶ 38–39).

On March 1, 2024, NAPA sent St. Joseph's a cease-and-desist letter demanding that St. Joseph's refrain from inducing the Clinicians to terminate their contracts with NAPA. (*Id.* at 29, ¶ 40). St. Joseph's did not rescind the offers of employment in response to the cease-and desist. (*Id.* at 29, ¶ 41). Approximately forty-five NAPA clinicians accepted the employment offer from St. Joseph's, allegedly in breach of their own employment contracts with NAPA. (*Id.*).[4] These clinician agreements each contained restrictive covenants. (*Id.* at 31–32, ¶ 49).

## III. PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS UNDER RULE 12(b)(6)

### A. Standard of Review

To survive a motion to dismiss under Rule 12(b)(6) for failure to state a claim, "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Mere "labels and conclusions" are insufficient; rather, a plaintiff must provide factual allegations sufficient "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The Court must "accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *E.E.O.C. v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). Additionally, "the tenet that a court must accept as

---

[3] St. Joseph's indicated in this email that it was suing for alleged violations of federal and state antitrust law. (Dkt. No. 87, at 29, ¶ 38).

[4] On June 27, 2024, NAPA initiated an action in state court against the providers, alleging they breached the restrictive covenants in their individual agreements. The state action is currently stayed pending a final determination in this federal action. *American Anesthesiology of Syracuse, P.C. v. Dalton*, No. 6645/2024 (Onondaga Sup. Ct. Mar. 24, 2025), ECF No. 43.

true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The same standards apply to a motion to dismiss a counterclaim as to a motion to dismiss a complaint, with pleadings "construed 'in the light most favorable to [the counter-claimant], resolving all doubts in [the counter-claimant's] favor.'" *Zurich Am. Life Ins. Co. v. Nagel*, 571 F. Supp. 3d 168, 175 (S.D.N.Y. 2021) (alterations in original) (quoting *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85 (2d Cir. 2013)). "[C]ounterclaims must meet the pleading requirements of Rule 8(a), as interpreted by *Twombly* and *Iqbal*, in order to survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Erickson Beamon Ltd. v. CMG Worldwide, Inc.*, No. 12-cv-5105, 2014 WL 3950897, at *7, 2014 U.S. Dist. LEXIS 112437, at *18 (S.D.N.Y. Aug. 12, 2014) (citing *Orientview Techs. LLC v. Seven for All Mankind, LLC*, No. 13-cv-538, 2013 WL 4016302, at *2, 2013 U.S. Dist. LEXIS 111107, at *5–6 (S.D.N.Y. Aug. 7, 2013) ("A motion to dismiss a counterclaim is evaluated under the same standard as a motion to dismiss a complaint." (citation omitted))).

**B.    Discussion**

NAPA's counterclaim for tortious interference with contractual relations alleges that St. Joseph's improperly interfered with the employment agreements between NAPA and its clinicians by inducing the clinicians to cease their employment with NAPA in violation of the non-compete provisions in the contracts. (Dkt. No. 87, at 44–46, ¶¶ 97–108). The elements of tortious interference with contractual relations are: "[1] the existence of a valid contract between the plaintiff and a third party, [2] defendant's knowledge of that contract, [3] defendant's intentional procurement of the third-party's breach of the contract without justification, [4] actual breach of the contract, and [5] damages resulting therefrom." *Rich v. Fox News Network, LLC*, 939 F.3d 112, 126–27 (2d Cir. 2019) (quoting *Lama Holding Co. v. Smith Barney Inc.*, 88

6

N.Y.2d 413, 424 (1996)). St. Joseph's argues that NAPA has failed to plead the first element, contending that the restrictive covenants in the contracts at issue are invalid because they are not supported by a legitimate business interest. (Dkt. No. 89-1, at 8).

A noncompete clause is only enforceable if it is, *inter alia*, "necessary to protect the employer's legitimate interests." *BDO Seidman v. Hirshberg*, 93 N.Y.2d 382, 389 (1999). Here, NAPA alleges that the non-compete provisions protect NAPA's business interests in: (1) "protect[ing] its goodwill, which arises from its customer, patient, and client relationships," (Dkt. No. 87, at 32, ¶ 52); (2) "protect[ing] NAPA's substantial relationships with its existing patients, referral sources, and customers, as well as the hospitals and healthcare facilities at which NAPA provides professional services," (*id.* at 33, ¶ 54); (3) preventing "special harm due to the unique and extraordinary nature of the clinicians' services and training," (*id.* at 33, ¶ 55); and (4) "protecting its confidential and private information, which the clinicians obtained through their employment with NAPA," (*id.* at 38, ¶ 70).

NAPA argues that these allegations are sufficient to "plausibly allege the existence of a valid contract between itself and a third party," and that "New York courts routinely refuse to address the enforceability of noncompete agreements at the motion to dismiss stage." (Dkt. No. 92, at 9–10 (citing cases)). St. Joseph's responds that the Court previously rejected this argument. (Dkt. No. 95, at 8–9). Indeed, in the Court's decision on the first motion to dismiss, the Court ruled that NAPA did not adequately plead the existence of a valid contract because the allegations were so bare. (Dkt. No. 83, at 18–20). Now, however, the Second Amended Counterclaims contain many more details about the agreements, and provide a composite exhibit of each of the employment agreements at issue. (Dkt. No. 87, at 30–32, ¶¶ 43–50; Dkt. No. 87-1; Dkt. No. 87-2). At this early stage of litigation, the Court finds this sufficient to plausibly allege

the existence of valid contracts. *See Installed Bldg. Prods., LLC v. Cottrell*, No. 13-cv-1112, 2014 WL 3729369, at *8, 2014 U.S. Dist. LEXIS 101926, at *22 (W.D.N.Y. July 25, 2014) ("In this case, there are a number of fact-bound issues that will feed into the non-compete agreement's reasonableness. . . . [including] whether the employer actually has legitimate business interests[.]"); *see also Twitchell Tech. Prods., LLC v. Mechoshade Sys., LLC*, 227 A.D.3d 45, 56 (2d Dep't 2024) ("Moreover, in light of the procedural posture of this case and the insufficient record, it is premature to determine [whether] . . . [the corporation has] a legitimate business interest . . . Accordingly, although we may reach a different determination on a more fully developed record, for purposes of this motion [to dismiss], we cannot say that [the corporation] lacks a legitimate business interest[.]" (citation omitted)); *see also TrueSource, LLC v. Niemeyer*, No. 19-cv-4121, 2021 U.S. Dist. LEXIS 12520, at *9[5] (E.D.N.Y. Jan. 21, 2021) ("Moreover, the reasonable length and geographic scope of a restrictive covenant cannot be judged in isolation and without consideration of a plaintiff's legitimate business interests . . . [which] have yet to be determined."). Therefore, although the Court has previously expressed doubt about whether the non-competes are necessary to protect a legitimate interest, (Dkt. No. 83, at 21–22), at this early stage of the proceeding the Court denies Plaintiff's motion to dismiss the counterclaim.

### IV. CONCLUSION

For these reasons, it is hereby

**ORDERED** that Plaintiff's motion to dismiss (Dkt. No. 89) is **DENIED**.

**IT IS SO ORDERED.**

Dated: July 29, 2025
Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge

---

[5] No WL cite available.